**FILED**

MAY 1 7 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

MONTGOMERY BLAIR SIBLEY,
4000 MASSACHUSETTS AVE., N.W., #1518
WASHINGTON, D.C. 20016
202-478-0371,

CASE NO.:

PLAINTIFF,

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

VS.

**JURY TRIAL REQUESTED**

BARRACK OBAMA,
PRESIDENT OF THE UNITED STATES,
1600 PENNSYLVANIA AVENUE,
WASHINGTON, D.C. 20500
202-456-1414,

Case: 1:11-cv-00919
Assigned To : Bates, John D.
Assign. Date : 5/17/2011
Description: TRO/PI

AND

ERIC H. HOLDER, JR.,
U.S. ATTORNEY GENERAL,
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C., 20530
202-514-2000.

DEFENDANTS.

_____/

Plaintiff Montgomery Blair Sibley sues Defendants Barrack Obama, President of the United

States, and Eric H. Holder, Jr., United States Attorney General, and alleges:

### INTRODUCTION

1.      By this lawsuit, Plaintiff seeks:

        a.      Injunctive enforcement of the campaign promises of Defendant Obama <u>not</u>

to use Justice Department resources to circumvent state laws on medical marijuana.

        b.      Review of the constitutionality of the Controlled Substances Act and the rules

1

and practices of the Justice Department related to marijuana which, both on their face and as applied, exceed the bounds of federal authority as limited by the U.S. Constitution under:

      i.     The Commerce Clause which cannot be used for the purpose of regulating and restraining the purchase of the marijuana which is beyond the power of Congress, and must be declared as invalid;

      ii.     The express and limited delegation to the federal government of the power to "punish" found only at Article I, §8 and Article III, §3;

      iii.     The Ninth Amendment which protects Plaintiff from the Federal Government denying or disparaging Plaintiff's Ninth Amendment retained right to self-medicate with marijuana as recommended by a physician; and/or

      iv.     The Tenth Amendment which removes from the Federal Government the police power, and reserves such power exclusively to the several states.

      c.     A declaratory judgment that Congress has in part amended by implication the Controlled Substances Act by its approval of the Legalization of Marijuana for Medical Treatment Amendment Act of 2010 (hereinafter "D.C. Medical Marijuana Act") enacted by the District of Columbia Council in May 2010.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to: (i) 28 U.S.C. §1331, (ii) 28 U.S.C. §1343(a), (iii) 28 U.S.C. §2201 and §2202 and (iv) 42 U.S.C. §1983.

3.     Venue in this district is proper under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Columbia.

**PARTIES**

4.      Plaintiff is a resident of the District of Columbia and a citizen of the United States. Plaintiff has publically expressed his intent with others to become a licensed medical marijuana cultivator pursuant to the D.C. Medical Marijuana Act.   See Exhibit "A" attached hereto. Additionally, Plaintiff has: (i) filed his "Letter of Intent" to operate a medical marijuana cultivation and/or dispensary operation pursuant to the D.C. Medical Marijuana Act and the Rules promulgated thereunder with the District of Columbia, (ii) entered into an agreement in January 2011 to lease certain property in the District of Columbia for the express purpose of growing and/or dispensing medical marijuana and (iii) organized with others by telephone and/or email for a license to grow medical marijuana under the D.C. Medical Marijuana Act.  Finally, Plaintiff has been diagnosed as having glaucoma by an Optometrist and thus will be seeking to become a "qualifying patient" to use Medical Marijuana as authorized under the D.C. Medical Marijuana Act.

5.      Defendant Obama is the President of the United States.

6.      Defendant Eric H. Holder, Jr. is the United States Attorney General.

**BACKGROUND**

7.      The Controlled Substances Act was signed into law by President Nixon on October 27, 1970, and made it a federal criminal offense, *inter alia*, to:

a.      Manufacture, distribute, or possess with intent to distribute any controlled substance including marijuana ( 21 U.S.C. §841);

b.      Knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances including marijuana (21 U.S.C. §856);

c.      Use any communication facility to commit felony violations of the Controlled

3

Substances Act (21 U.S.C. §843);

        d.      To conspire or attempt to commit any of the crimes set forth in the Controlled Substances Act, including manufacturing, distributing, or possessing marijuana (21 U.S.C. §846); and

        e.      To distribute marijuana to persons under age twenty-one of age (21 U.S.C. §860).

    8.     On December 24, 1973, Congress enacted the District of Columbia Home Rule Act. Pursuant to the Home Rule Act, D.C. Code §1-201, the District of Columbia was granted by Congress the right govern its own affairs: "[s]ubject to the retention by Congress of the ultimate legislative authority over the nation's capital granted by article I, 8.". Additionally, the Home Rule Act at §602(c)(1) provides that: "Except as provided in paragraph (2) [of this subsection,] such act [of the District of Columbia Council] shall take effect upon the expiration of the 30-calendar-day period. . . unless during such 30-day period, there has been enacted into law a joint resolution disapproving such act. In any case in which any such joint resolution disapproving such an act has, within such 30-day period, passed both Houses of Congress and has been transmitted to the President, such resolution, upon becoming law, subsequent to the expiration of such 30-day period, shall be deemed to have repealed such act, as of the date such resolution becomes law."

    9.     In 1998 the District of Columbia electorate voted on Initiative 59, a measure that would have legalized marijuana for medicinal purposes in the District of Columbia. Before the ballot count could be released, Representative Bob Barr sponsored a rider on the District of Columbia appropriations bill that banned the use of marijuana for medicinal purposes and prevented the use of public funds to put this issue on the ballot again. Election officials confirmed a year later that

69% of district voters had approved Initiative 59, but their mandate was silenced by the "Masters" of the "Plantation State" in which District of Columbia residents – and United States citizens – live through the so-called "Barr Amendment".

     10.    During his campaign for the Presidency in 2007, Defendant Obama made, among other promises related to Medical Marijuana, the following public campaign promises to the electorate:

     a.    On August 21, 2007, during a campaign event in Nashua, New Hampshire, Defendant Obama was asked by seriously ill Nashua resident Scott Turner if he would end the federal raids on medical marijuana patients like him. Sen. Obama replied: "I would not have the Justice Department prosecuting and raiding medical marijuana users. It's not a good use of our resources."

     b.    "In terms of prescribing medical marijuana as a treatment for glaucoma or as a cancer treatment, I think that [it] should be appropriate because it's really no different than a doctor prescribing morphine or anything else."

     c.    "I'm not going to be using Justice Department resources to try to circumvent state laws on this issue," Defendant Obama told the Mail Tribune newspaper in Oregon in March, 2007 during the Democratic primary campaign. He told the newspaper the "basic concept of using medical marijuana for the same purposes and with the same controls as other drugs prescribed by doctors, I think that's entirely appropriate."

     d.    Defendant Obama said: "I'm not going to be using Justice Department resources to try to circumvent state laws on this issue [of medical marijuana]."

     e.    Defendant Obama had explicitly stated, "I would not have the Justice

Department prosecuting and raiding medical marijuana; it is not a good use of our resources."

11.     On November 4, 2008, Plaintiff, a registered qualified elector in the District of Columbia, relying upon Defendant Obama's campaign promises related to Medical Marijuana, cast his vote for Defendant Obama to become President of the United States.  On January 20, 2009, Defendant Obama was sworn in as President of the United States after winning the presidential election and the subsequent electoral college vote.

12.     On October 19, 2009, Deputy Attorney General David Ogden issued a Memorandum to selected United States Attorneys on the "Investigation and Prosecution in States Authorizing the Medical use of Marijuana."   A copy of that Memorandum is attached hereto as Exhibit "B". Significantly, the Memorandum directed those United States Attorneys: "As a general matter, pursuit of [the prosecution of significant traffickers of illegal drugs, including marijuana] should not focus federal resources in your States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana."

13.     In December 2009, Congressmen Jose Serrano and David Obey stewarded the removal of the "Barr Amendment" language from the District of Columbia appropriations bill that had barred the District of Columbia from implementing the results of Initiative 59.  On December 13, 2009, Congress passed the omnibus spending bill and thereby affirmatively and finally allowed the District of Columbia to implement the will of its people as expressed in Initiative 59.  President Obama subsequently signed the omnibus spending bill into law.

14.     On May 4, 2010, the District of Columbia Council, by a 13-0 vote, gave final approval to the D.C. Medical Marijuana Act.  Mayor Fenty signed that Act into law on May 21, 2010.  Significantly, though transmitted to Congress pursuant to the Home Rule Act, §602, Congress

took <u>no</u> action on the D.C. Medical Marijuana Act and, accordingly, it became law with Congressional approval thirty (30) days later on June 20, 2010.  Among it's provisions, the D.C. Medical Marijuana Act authorized the cultivation and dispensing of marijuana to "qualifying patients" for treatment of: (i) human immunodeficiency virus,  (ii) acquired immune deficiency syndrome , (iii) glaucoma, (iv) conditions characterized by severe and persistent muscle spasm, such as multiple sclerosis, and (v) cancer.  Additionally, that Act repealed those sections of the D.C. Code and Regulations in conflict with the Act.

15.    On March 27, 2011, The National Cancer Institute, which is one of the many federal agencies which make up the National Institute of Health, concluded that: "The potential benefits of medicinal Cannabis for people living with cancer include antiemetic effects, appetite stimulation, pain relief, and improved sleep. Though no relevant surveys of practice patterns exist, it appears that physicians caring for cancer patients who prescribe medicinal Cannabis predominantly do so for symptom management."

16.    On April 14, 2011, two United States Attorneys wrote a letter to Governor Gregorie of Washington State indicating *inter alia* that:

a.    "We understand that the proposals being considered by the Legislature would establish a licensing scheme for marijuana growers and dispensaries, and for processors of marijuana-infused foods among other provisions. We have consulted with [Defendant Holder] and the Deputy Attorney General about the proposed legislation. This letter is written to ensure there is no confusion regarding the Department of Justice's view of such a licensing scheme."

b.    "[W]e maintain the authority to enforce the [Controlled Substances Act] vigorously against individuals and organizations that participate in unlawful manufacturing and

distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives."

        c.     "[T]he Department could consider civil and criminal legal remedies regarding those who set up marijuana growing facilities and dispensaries as they will be doing so in violation of federal law. Others who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law. **In addition, state employees who conducted activities mandated by the Washington legislative proposals would not be immune from liability under the Controlled Substances Act**." (Emphasis added).

A copy of the April 14, 2011, letter is attached hereto as Exhibit "C".

    17.     On April 15, 2011, District of Columbia Mayor Gray published on an emergency basis the long-awaiting implementation of the D.C. Medical Marijuana Act through the one hundred (100) pages of Administrative Rules which added to Title 22 of the District of Columbia Municipal Regulations as a new subtitle C entitled "Medical Marijuana." Additionally, on the same date, Mayor Gray issued Mayor Order 9978 which required all individuals and enmities who wished to seek permits to grow and dispense medical marijuana to submit in writing a "Letter of Intent" to that end by June 17, 2011. The Order indicates that the dates for the actual filing of the applications will be published in the D.C. Register at a future date. A copy of Mayor Order 9978 is attached hereto as Exhibit "D".

    18.     Plaintiff has formed The Medicinal Marijuana Company of the District of Columbia, Inc., for the express purpose to: "cultivate and dispense medicinal marijuana as permitted by law

and any other purpose permitted by law." Additionally, on April 18, 2011, Plaintiff submitted his "Letter of Intent" to the District of Columbia Department of Health giving notice that he intended to seek both a Medical Marijuana Cultivator and Dispensary permit under the D.C. Medical Marijuana Law.

19.     Plaintiff has also formed The Medicinal Marijuana Company of American, L.L.C. to act as a consulting service for other who wish to apply under the D.C. Medical Marijuana Act to cultivate or dispense medical marijuana.

### FIRST CLAIM
### DECLARATORY RELIEF
*(Defendant Obama & Promissory Estoppel)*

20.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by reference.

21.     During his campaign for the Presidency, Defendant Obama made certain promises to the American People regarding Medical Marijuana.

22.     Defendant Obama should have reasonably expected to induce the action of citizens – including Plaintiff – voting for him for President as a result of those aforementioned promises and in the case of Plaintiff did induce such action.

23.     Defendant Obama has breached those promises as evidenced by Exhibit "B" and the recent publicly reported federal raids on state law compliant medical marijuana operations in various states which Plaintiff requests that this Court take judicial notice of pursuant to Federal Rules of Evidence, Rule 201.

24.     Plaintiff, relying on Defendant Obama's campaign promises, has pursued pursuant to the D.C. Medical Marijuana Act the permission to grow and dispense medical marijuana and now

has hanging over his head the threat of criminal prosecution under 21 U.S.C. §840 *et seq.* for: (i) conspiring and/or attempting to grow medical marijuana, and (ii) advising others through a "communication facility" on how to set up a medical marijuana cultivation and/or dispensary pursuant to the D.C. Medical Marijuana Act. As a result, Plaintiff potentially faces federal criminal prosecution for those actions and, *in futuro*, federal criminal prosecution if he is deemed a "qualifying patient" and properly possesses marijuana pursuant to the D.C. Medical Marijuana Act.

25.     There is no adequate remedy at law for the damage caused by a criminal prosecution and incarceration.

WHEREFORE, Plaintiff requests that this Court:

A.     Assume jurisdiction of this claim;

B.     Declare the rights and other legal relations of Plaintiff specifically finding that Defendant Obama has breached his campaign promises related to medical marijuana and enter a permanent injunction preventing President Obama from using Justice Department resources to circumvent state laws on medical marijuana during his first term as President.

C.     Retain jurisdiction of this matter to enforce this declaratory degree and permanent injunction if subsequently violated by Defendant Obama;

D.     Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.     Enter such other and further relief as the Court deems just and proper.

**SECOND CLAIM**
**DECLARATORY RELIEF**
(*Defendant Holder & the Commerce Clause*)

26.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by

reference.

27.     Plaintiff intends to grow and/or use marijuana to treat his glaucoma.

28.     Defendant Holder has explicitly stated that the Department of Justice has the authority to arrest, prosecute and incarcerate Plaintiff if he grows and/or uses marijuana to treat his glaucoma.

29.     The rules and practices of the Department of Justice, both on their face and as applied, in the enforcement of the Controlled Substances Act related to marijuana exceeds the scope of the Commerce Clause's grant of power to the Federal government.  In particular, those laws are for the sole purpose of regulating and restraining the production, purchase and possession of the marijuana and thus are beyond the power of Congress, and must be declared as invalid by this Court.

WHEREFORE, Plaintiff requests that this Court:

A.     Assume jurisdiction of this claim;

B.     Declare the rights and other legal relations of Plaintiff specifically finding that the rules and practices of Defendant Holder in enforcing the Controlled Substances Act related to marijuana exceeds the grant of authority to the Federal Government under the Commerce Clause;

C.     Retain jurisdiction of this matter to enforce this declaratory degree if subsequently violated by Defendant Holder;

D.     Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.     Enter such other and further relief as the Court deems just and proper.

### THIRD CLAIM
### DECLARATORY RELIEF
*(Defendant Holder & the Limited Power of the Federal Government to Punish)*

30.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by reference.

.     31.     Plaintiff intends to grow and/or use marijuana to treat his glaucoma.

32.     Defendant Holder has explicitly stated that the Department of Justice has the authority to arrest, prosecute and incarcerate Plaintiff if he grows and/or uses marijuana to treat his glaucoma.

33.     The rules and practices of the Department of Justice related to enforcement of the Controlled Substances Act related to marijuana exceeds the power of the federal government to "punish" which is expressly limited to three instances in the United States Constitution. First and Second, at Article 1, §8: "The Congress shall have power  . . .To define and punish piracies and felonies committed on the high seas, and offenses against the law of nations" and "To provide for the punishment of counterfeiting the securities and current coin of the United States". Third, at Article III, §3, "The Congress shall have power to declare the punishment of treason . . .". Plainly, the Federal Government does not have plenary power to define and punish criminal acts including the manufacture and possession of marijuana.

34.     Lacking an express grant of authority to otherwise "punish", the Federal Government possesses <u>no</u> power to punish Plaintiff – or anyone – for the cultivation, dispensing and/or use of marijuana.

WHEREFORE, Plaintiff requests that this Court:

A.     Assume jurisdiction of this claim;

12

B.      Declare the rights and other legal relations of Plaintiff specifically finding that Defendant Holder has exceeded the grant of federal authority given to the federal government to "punish" Plaintiff by enforcing the Controlled Substances Act related to marijuana.

C.      Retain jurisdiction of this matter to enforce this declaratory degree if subsequently violated by Defendant Holder;

D.      Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.      Enter such other and further relief as the Court deems just and proper.

### FOURTH CLAIM
### DECLARATORY RELIEF
*(Defendant Holder & the Ninth Amendment)*

35.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by reference.

36.     Plaintiff intends to grow and/or use marijuana to treat his glaucoma.

37.     Defendant Holder has explicitly stated that the Department of Justice has the authority to arrest, prosecute and incarcerate Plaintiff if he grows and/or uses marijuana to treat his glaucoma.

38.     The Ninth Amendment states that: "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."

39.     The rules and practices of the Department of Justice related to enforcement of the Controlled Substances Act related to marijuana deny or disparage Plaintiff's Ninth Amendment retained right to self-medicate with marijuana as recommended by a physician.

WHEREFORE, Plaintiff requests that this Court:

13

A.      Assume jurisdiction of this claim;

B.      Declare the rights and other legal relations of Plaintiff specifically finding that Defendant Holder has violated the Ninth Amendment by enforcing and/or threatening to enforce the Controlled Substances Act related to marijuana.

C.      Retain jurisdiction of this matter to enforce this declaratory degree if subsequently violated by Defendant Holder;

D.      Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.      Enter such other and further relief as the Court deems just and proper.

## FIFTH CLAIM
### DECLARATORY RELIEF
*(Defendant Holder & the Tenth Amendment)*

40.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by reference.

41.     Plaintiff intends to grow and/or use marijuana to treat his glaucoma.

42.     Defendant Holder has explicitly stated that the Department of Justice has the authority to arrest, prosecute and incarcerate Plaintiff if he grows and/or uses marijuana to treat his glaucoma.

43.     The Tenth Amendment states that: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

44.     The Constitution does not delegate to the Federal Government the power to interfere with the People's right to use marijuana by exercise of police power.

14

WHEREFORE, Plaintiff requests that this Court:

A.      Assume jurisdiction of this claim;

B.      Declare the rights and other legal relations of Plaintiff specifically finding that Defendant Holder has violated the Tenth Amendment by enforcing and/or threatening to enforce the Controlled Substances Act related to marijuana.

C.      Retain jurisdiction of this matter to enforce this declaratory degree if subsequently violated by Defendant Holder;

D.      Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.      Enter such other and further relief as the Court deems just and proper.

### SIXTH CLAIM
### DECLARATORY RELIEF
*(Defendant Holder & the Partial Repeal by Implication of the Controlled Substances Act)*

45.     Plaintiff re-alleges paragraphs 1 through 19 and incorporates them herein by reference.

46.     Plaintiff intends to cultivate, dispense and/or use medical marijuana only when and as authorized by the D.C. Medical Marijuana Act.

47.     Defendant Holder has explicitly stated that the Department of Justice has the authority under the Controlled Substances Act to arrest, prosecute and incarcerate Plaintiff if he cultivates, dispenses and/or uses medical marijuana when and as authorized by the D.C. Medical Marijuana Act.

48.     Congress has in part amended by implication the Controlled Substances Act by its approval the D.C. Medical Marijuana Act as Congress cannot both expressly authorize the District

15

of Columbia to permit the cultivation, dispensing and use of Medical Marijuana while at the same time criminalizing that cultivation, dispensing and use and expressly threatening to prosecute anyone who cultivates, dispenses and/or uses marijuana as authorized under the D.C. Medical Marijuana Act.

49.     Here, the provisions of the Controlled Substances Act – made effective by Congress in 1970 – and the D.C. Medical Marijuana Act – made effective by Congress in 2010 – are in irreconcilable conflict. As such, the latter Act repeals by implication the subject of the earlier one as it relates to the medical use of Marijuana and Congress plainly intended the latter as a substitute in part for the former. Otherwise, the only alternative explanation is that Congress acted irrationally and/or with the intent to entrap citizens, such as Plaintiff, who in good faith rely upon the actions of Congress to pursue personally and professionally the cultivation, distribution and/or use of Medical Marijuana pursuant to the D.C. Medical Marijuana Act.

WHEREFORE, Plaintiff requests that this Court:

A.      Assume jurisdiction of this claim;

B.      Declare the rights and other legal relations of Plaintiff specifically finding that Congress has in part amended by implication the Controlled Substances Act by its approval the D.C. Medical Marijuana Act.

C.      Retain jurisdiction of this matter to enforce this declaratory degree if subsequently violated by Defendant Holder;

D.      Awarding reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C. §1988; and

E.      Enter such other and further relief as the Court deems just and proper.

## JURY TRIAL REQUESTED

It is the jury which has the right to take upon itself to determine the law as well as the facts in controversy. Accordingly, Plaintiff demands a Jury Trial on all issues of fact and law raised herein. Alternatively, Plaintiff requests an advisory jury be empaneled to advise the Court on the facts and the law.

**MONTGOMERY BLAIR SIBLEY**
**PLAINTIFF**
4000 Massachusetts Ave, NW, #1518
Washington, D.C. 20016
Voice/Fax: 202-478-0371

By: _____
        Montgomery Blair Sibley

17

3/8/2011                                    D.C.'s pot pioneers: Seeking a piece of the...

# The Washington Post

## D.C.'s pot pioneers: Seeking a piece of the medical marijuana action

By Paul Schwartzman
Washington Post Staff Writer
Tuesday, March 8, 2011; A01

Montgomery Blair Sibley might be best known as the lawyer who defended the "D.C. madam," the infamous escort service owner who claimed to attend to the needs of Washington's elite.



365 Days A Year.     Turnberry Tower

571-327-8105
www.TurnberryTower.com
Sales Office Open 7 Days, 9-6

MORE PHOTOS

Sibley has a new focus these days, one that's luring a rabbi, a waitress, a State Department technician and a gaggle of other fledgling entrepreneurs: growing marijuana and selling it to sick people in the nation's capital.

He and his partners have divined a logo ("Rx" over a pot plant) and a company name (the Medicinal Marijuana Company of America) and have found a New York Avenue warehouse at which they hope to grow enough pot to make a profit in the first year.

But the District is only part of Sibley's grand plan, which is to turn his growing operation into a national chain as ubiquitous as, say, McDonald's. "I want to be the Ray Kroc of medical marijuana," Sibley said, referring to the man behind the golden arches.

Every new industry is driven by risk-taking pioneers, and it's no different with medical marijuana in the District, where those seeking a piece of the cannabis action include an electrician from Baltimore, an unemployed administrator who lives in Southeast Washington and the owners of a hemp clothing store in Adams Morgan.

As the Gray administration finalizes regulations, some of those entrepreneurs are crafting business plans, lining up financing, and anticipating fierce competition to obtain licenses to operate five dispensaries and 10 cultivation centers. Whether motivated by the prospect of profit or a belief in marijuana as a therapeutic salve - or a mixture of both - everyone is cagey about their plans, because no one is certain who is in the hunt.

"People are hiding in the shadows," said Alan Amsterdam, a co-owner of the hemp store who is part of a team hoping to open a dispensary and cultivation center. "Then they'll strike like a cobra."

**FILED**

MAY 17 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Steph Sherer, executive director of Americans for Safe Access, a nonprofit group that

advocates for medical marijuana, said her office had received "hundreds of calls" from people interested in opening businesses in the District. But she said the pool is sure to dwindle as they learn that banks are reluctant to lend money to such start-ups and that medical marijuana remains illegal under federal law, even though the Justice Department has said it's uninterested in prosecuting dispensaries.

"What ends up weeding a lot of people out is the realization that they're committing an act of federal civil disobedience by getting involved," she said. "They have to make a decision about whether they're willing to take the risk."

## Cupcake cannabis

The costs can be daunting, too. A license in the District will cost $10,000. Then there's the money needed for a lease, security, staff, lighting and irrigation systems, and, of course, the marijuana to grow or sell.

"There are a lot of people who think they're going to make a lot of money," Sherer said. "They borrow money from everyone they know. They borrow from their kids' education funds, and then they find out it's not that profitable."

Still, they can dream.

Todd Mizis, 34, an audio-visual specialist for the State Department, has visions of owning a bakery that makes cookies, brownies and cupcakes laced with cannabis, all of which he would sell to dispensaries. Mizis even came up with a name for his venture: Baked DC.

Amber McKay, 25, a mother of three who makes $150 a week as a waitress at Pane E Vino, an Italian restaurant at the Lorton Town Center, said she recognized a new frontier when the District legalized medical marijuana last year. "I saw an opportunity for making money," she said.

The people whom she consulted included her father, a contractor, who asked, "Are you serious?" Her stepmother blanched. Her pastor said, "Oh, really."

John Wilson, a District real estate broker also on her consultation list, said he had fielded calls from at least half a dozen groups searching for space to sell or grow pot. He recommended that McKay speak with someone else who had called him, Sibley, with whom she has formed a partnership.

Sibley, 54, is a descendant of a long line of American titans, including a great-great-grandfather who was the namesake for Blair House, across from the White House. Another great-great-grandfather founded Western Union. A lawyer for 30 years, Sibley was suspended by the Florida bar in 2008 for failing to pay $100,000 in child support, leaving him with time to pour into his new business.

His to-do list includes finding a qualified grower - he's running an ad on Craigslist under the

heading "Become a Medical Marijuana Cultivator."

"This one is wide open," Sibley said of his new field. "There is no one controlling the market. The barriers for entry are very low."

At least one seasoned purveyor is no longer interested in doing business in the District: Stephen DeAngelo, a Washington native who operates a California dispensary that is one of the largest in the world, said he was turned off by a D.C. Council member's characterization of him as a profiteer.

"I'm the farthest thing from a profiteer," he said. "I have no desire to go where I'm not welcome."

### Marijuana gold rush

As an industry, medical marijuana has exploded since the mid-1990s, with 15 states and the District approving legislation. In 2002, there were 11 dispensaries in the United States, according to Americans for Safe Access. Now there are about 2,000. Lawyers, lobbyists and others have found work pushing legislation and helping start-ups craft proposals and navigate the licensing process.

"I've fielded a dozen or so calls, serious calls, from people saying: 'We're ready. We'd like to enter this. We have investors. What do you know?' " said Michael Rothman, a Rockville defense lawyer who recently added a wing to his practice that he calls the Medical Cannabis Law Group.

For now, Rothman said, he's happy to provide information for free, in part because he supports medical marijuana. But he later plans to charge for his services.

Although D.C. voters supported medical marijuana in a referendum in 1998, Congress blocked the city from implementing the law until last year. After Mayor Vincent C. Gray (D) took office, officials began reviewing final regulations, and they will solicit proposals and award licenses. The unanswered questions include a key detail: Where will cultivators get their seeds to grow marijuana?

D.C. Council member David A. Catania (I-At Large), chairman of the health committee, expects the program to open next year and said the city should proceed methodically. "It's most important that it be done right than quickly," he said.

The District's regulations are more restrictive than other locales', narrowly defining who can obtain medical marijuana and capping at 95 the number of plants a cultivator can have in one place.

"You're going to be limited in what you can produce and what you can sell," said Adam Eidinger of the D.C. Patients Cooperative, which plans to apply for licenses to cultivate and dispense. "The idea that there will be an owner in the background collecting million-dollar

checks is mistaken."

## A rabbi's new calling

Not a problem, said Jeffrey A. Kahn, a rabbi who, with his wife, hopes to open a dispensary in Tacoma Park. Kahn's emergence as a potential dispenser inspired the headline "From Bima to Pot Seller" in a weekly newspaper that caters to a Jewish audience.

Kahn, no longer the leader of a congregation, said he saw the relief marijuana gave his father-in-law, who suffered from multiple sclerosis. "We're not entrepreneurs," he said. "We've been in the same profession for 20 to 30 years, and this is our midlife crisis, and we're looking for something else. This would provide us with the chance to make a living and help people."

Clayton Williams, 45, an electrician from Baltimore, also sees purpose in growing marijuana for the sick, something he said he has done unofficially in his city. He was ready to apply for a District license - "Congressional Cannabis" was a name he came up with - until he learned at a recent meeting that the city won't accept applications from convicted drug felons. A couple of years ago, he said, Baltimore police arrested him after finding 104 pot plants in his basement.

Still, Williams said he has not lost hope. The District may be off limits, but his home state and others are considering proposals to legalize medical marijuana. If they're more inviting, he said, he's ready to grow.

### Post a Comment

<u>View all comments</u> that have been posted about this article.

You must be logged in to leave a comment. Login | Register

.                                    .                    .

Submit

.          .

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the <u>full rules</u> governing commentaries and discussions. You are fully responsible for the content that you post.

**U.S. Department of Justice**

Office of the Deputy Attorney General

U.S. Depart. Attorney General                    Washington, DC 20530

October 19, 2009

MEMORANDUM FOR SELECTED UNITED STATES ATTORNEYS

FROM:       David W. Ogden
            Deputy Attorney General

SUBJECT:    Investigations and Prosecutions in States
            Authorizing the Medical Use of Marijuana

This memorandum provides clarification and guidance to federal prosecutors in States that have enacted laws authorizing the medical use of marijuana. These laws vary in their substantive provisions and in the extent of state regulatory oversight, both among the enacting States and among local jurisdictions within those States. Rather than developing different guidelines for every possible variant of state and local law, this memorandum provides uniform guidance to focus federal investigations and prosecutions in these States on core federal enforcement priorities.

The Department of Justice is committed to the enforcement of the Controlled Substances Act in all States. Congress has determined that marijuana is a dangerous drug, and the illegal distribution and sale of marijuana is a serious crime and provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels. One timely example underscores the importance of our efforts to prosecute significant marijuana traffickers: marijuana distribution in the United States remains the single largest source of revenue for the Mexican cartels.

The Department is also committed to making efficient and rational use of its limited investigative and prosecutorial resources. In general, United States Attorneys are vested with "plenary authority with regard to federal criminal matters" within their districts. USAM 9-2.001. In exercising this authority, United States Attorneys are "invested by statute and delegation from the Attorney General with the broadest discretion in the exercise of such authority." Id. This authority should, of course, be exercised consistent with Department priorities and guidance.

The prosecution of significant traffickers of illegal drugs, including marijuana, and the disruption of illegal drug manufacturing and trafficking networks continues to be a core priority in the Department's efforts against narcotics and dangerous drugs, and the Department's investigative and prosecutorial resources should be directed towards these objectives. As a general matter, pursuit of these priorities should not focus federal resources in your States on

Exhibit "B"





**FILED**

MAY 1 7 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Memorandum for Selected United States Attorneys                    Page 2
Subject: Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana

individuals whose actions are in clear and unambiguous compliance with existing state laws
providing for the medical use of marijuana.  For example, prosecution of individuals with cancer
or other serious illnesses who use marijuana as part of a recommended treatment regimen
consistent with applicable state law, or those caregivers in clear and unambiguous compliance
with existing state law who provide such individuals with marijuana, is unlikely to be an efficient
use of limited federal resources.  On the other hand, prosecution of commercial enterprises that
unlawfully market and sell marijuana for profit continues to be an enforcement priority of the
Department.  To be sure, claims of compliance with state or local law may mask operations
inconsistent with the terms, conditions, or purposes of those laws, and federal law enforcement
should not be deterred by such assertions when otherwise pursuing the Department's core
enforcement priorities.

    Typically, when any of the following characteristics is present, the conduct will not be in
clear and unambiguous compliance with applicable state law and may indicate illegal drug
trafficking activity of potential federal interest:

- unlawful possession or unlawful use of firearms;
- violence;
- sales to minors;
- financial and marketing activities inconsistent with the terms, conditions, or purposes of
  state law, including evidence of money laundering activity and/or financial gains or
  excessive amounts of cash inconsistent with purported compliance with state or local law;
- amounts of marijuana inconsistent with purported compliance with state or local law;
- illegal possession or sale of other controlled substances; or
- ties to other criminal enterprises.

    Of course, no State can authorize violations of federal law, and the list of factors above is
not intended to describe exhaustively when a federal prosecution may be warranted.
Accordingly, in prosecutions under the Controlled Substances Act, federal prosecutors are not
expected to charge, prove, or otherwise establish any state law violations.  Indeed, this
memorandum does not alter in any way the Department's authority to enforce federal law,
including laws prohibiting the manufacture, production, distribution, possession, or use of
marijuana on federal property.  This guidance regarding resource allocation does not "legalize"
marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any
privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or
witness in any administrative, civil, or criminal matter.  Nor does clear and unambiguous
compliance with state law or the absence of one or all of the above factors create a legal defense
to a violation of the Controlled Substances Act.  Rather, this memorandum is intended solely as a
guide to the exercise of investigative and prosecutorial discretion.

Finally, nothing herein precludes investigation or prosecution where there is a reasonable basis to believe that compliance with state law is being invoked as a pretext for the production or distribution of marijuana for purposes not authorized by state law.  Nor does this guidance preclude investigation or prosecution, even when there is clear and unambiguous compliance with existing state law, in particular circumstances where investigation or prosecution otherwise serves important federal interests.

Your offices should continue to review marijuana cases for prosecution on a case-by-case basis, consistent with the guidance on resource allocation and federal priorities set forth herein, the consideration of requests for federal assistance from state and local law enforcement authorities, and the Principles of Federal Prosecution.

cc:  All United States Attorneys

Lanny A. Breuer
Assistant Attorney General
Criminal Division

B. Todd Jones
United States Attorney
District of Minnesota
Chair, Attorney General's Advisory Committee

Michele M. Leonhart
Acting Administrator
Drug Enforcement Administration

H. Marshall Jarrett
Director
Executive Office for United States Attorneys

Kevin L. Perkins
Assistant Director
Criminal Investigative Division
Federal Bureau of Investigation



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Washington*

Suite 340 Thomas S. Foley U. S. Courthouse   (509) 353-2767
P. O. Box 1494                                          Fax (509) 353-2766
Spokane, Washington 99210-1494

Honorable Christine Gregoire                April 14, 2011
Washington State Governor
P.O. Box 40002
Olympia, Washington 98504-0002

      Re:    Medical Marijuana Legislative Proposals

Dear Honorable Governor Gregoire:

    We write in response to your letter dated April 13, 2011, seeking guidance from the Attorney General and our two offices concerning the practical effect of the legislation currently being considered by the Washington State Legislature concerning medical marijuana. We understand that the proposals being considered by the Legislature would establish a licensing scheme for marijuana growers and dispensaries, and for processors of marijuana-infused foods among other provisions. We have consulted with the Attorney General and the Deputy Attorney General about the proposed legislation. This letter is written to ensure there is no confusion regarding the Department of Justice's view of such a licensing scheme.

    As the Department has stated on many occasions, Congress has determined that marijuana is a controlled substance. Congress placed marijuana in Schedule I of the Controlled Substances Act (CSA) and, as such, growing, distributing, and possessing marijuana in any capacity, other than as part of a federally authorized research program, is a violation of federal law regardless of state laws permitting such activities.

    The prosecution of individuals and organizations involved in the trade of any illegal drugs and the disruption of drug trafficking organizations is a core priority of the Department. This core priority includes prosecution of business enterprises that unlawfully market and sell marijuana. Accordingly, while the Department does not focus its limited resources on seriously ill individuals who use marijuana as part of a medically recommended treatment regimen in compliance with state law as stated in the October 2009 Ogden Memorandum, we maintain the authority to enforce the CSA vigorously against individuals and organizations that participate in unlawful manufacturing and distribution activity involving marijuana, even if such activities are permitted under state law. The Department's investigative and prosecutorial resources will continue to be directed toward these objectives.

Exhibit "C"



FILED

MAY 17 2011

Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

Honorable Christine Gregoire
April 14, 2011
Page 2

Consistent with federal law, the Department maintains the authority to pursue criminal or civil actions for any CSA violations whenever the Department determines that such legal action is warranted. This includes, but is not limited to, actions to enforce the criminal provisions of the CSA such as:

> \- 21 U.S.C. § 841 (making it illegal to manufacture, distribute, or possess with intent to distribute any controlled substance including marijuana);

> \- 21 U.S.C. § 856 (making it unlawful to knowingly open, lease, rent, maintain, or use property for the manufacturing, storing, or distribution of controlled substances);

> \- 21 U.S.C. § 860 (making it unlawful to distribute or manufacture controlled substances within 1,000 feet of schools, colleges, playgrounds, and public housing facilities, and within 100 feet of any youth centers, public swimming pools, and video arcade facilities);

> \- 21 U.S.C. § 843 (making it unlawful to use any communication facility to commit felony violations of the CSA); and

> \- 21 U.S.C. § 846 (making it illegal to conspire to commit any of the crimes set forth in the CSA).

In addition, Federal money laundering and related statutes which prohibit a variety of different types of financial activity involving the movement of drug proceeds may likewise be utilized. The Government may also pursue civil injunctions, and the forfeiture of drug proceeds, property traceable to such proceeds, and property used to facilitate drug violations.

The Washington legislative proposals will create a licensing scheme that permits large-scale marijuana cultivation and distribution. This would authorize conduct contrary to federal law and thus, would undermine the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances. Accordingly, the Department could consider civil and criminal legal remedies regarding those who set up marijuana growing facilities and dispensaries as they will be doing so in violation of federal law. Others who knowingly facilitate the actions of the licensees, including property owners, landlords, and financiers should also know that their conduct violates federal law. In addition, state employees who conducted activities mandated by the Washington legislative proposals would not be immune from liability under the CSA. Potential actions the Department could consider include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any

Honorable Christine Gregoire
April 14, 2011
Page 3

property used to facilitate a violation of the CSA.  As the Attorney General has repeatedly stated, the Department of Justice remains firmly committed to enforcing the CSA in all states.

We hope this letter assists the State of Washington and potential licensees in making informed decisions regarding the cultivation, manufacture, and distribution of marijuana.

Very truly yours,

Jenny A. Durkan
United States Attorney
Western District of Washington

Michael C. Ormsby
United States Attorney
Eastern District of Washington

Retrieved from: http://www.medicinal-marijuana-company.com/

### DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH
### MEDICAL MARIJUANA PROGRAM

### PUBLIC NOTICE

**Letter of Intent for Cultivation Centers and Dispensaries Applications**

Summary: In accordance with Emergency Regulations published April 15, 2011, applications for new cultivation center or dispensary registrations shall only be accepted by the Director during the open application period as specified by the Director by published Notice in the D.C. Register; such period shall not be extended. Prior to the submission of a formal application for a new cultivation center or dispensary registration, the prospective applicant shall submit a Letter of Intent to the Director or a designee. The Director shall only accept Letters of Intent during the time period specified by the Director by Notice in the D.C. Register, such period shall not be extended. The purpose of the Letter of Intent is to formally notify the Director that an application for a cultivation center or dispensary registration will be forthcoming.

The Letter of Intent shall include at least the following:

> (a) The individual's name, or the organization, corporation, or company name, of the prospective applicant, including the full name and title, with respect to the organization, corporation, or company of the primary contact;

> (b) The mailing address, which shall not be a post office box number, daytime telephone number, and email address of the applicant or primary contact person if not the same person;

> (c) The type of registration the prospective applicant may apply for;

> (d) A statement, not to exceed 100 words, defining the prospective applicant's intent to submit an application for a cultivation center or dispensary; and

> (e) The dated signature of the prospective applicant.

**Letters of Intent shall be submitted in writing and will be received beginning Monday, April 18, 2011 at 9:00 am and ending Friday, June 17, 2011 at 4:00pm.** Letters should be addressed to: Patricia M. D'Antonio, Program Manager, Pharmaceutical Control, Health Regulation and Licensing Administration, Department of Health, 899 North Capitol Street, NE, 2nd Floor Washington, DC 20002. Letters shall be submitted in a manner to ensure signed receipt.

Applicants may apply for both a cultivation center and dispensary registration, but must file a separate Letter of Intent and a separate application for each registration sought. An applicant may apply for more than one cultivation center registration but may apply for only one dispensary registration. Only the individuals and entities that submit timely Letters of Intent to the Director, meeting the requirements set forth in the regulations, shall be permitted to submit an application for a cultivation or dispensary registration.

Exhibit "D"